IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Criminal No. 22-99 |
| ROBERT PACEK | |

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by its attorneys, Eric G. Olshan, United States Attorney for the Western District of Pennsylvania, and Karen Gal-Or, Assistant United States Attorney for said District, hereby files its Sentencing Memorandum, and requests that this Court impose a sentence of 300 months' imprisonment.

I.      **Procedural Posture**

On April 5, 2022, the defendant, Robert Pacek, was charged by Indictment with one count of conspiring to distribute and receive child pornography, in violation of 18 U.S.C. §§ 2252(a)(2) and (b)(1); five counts of distributing child pornography, in violation of 18 U.S.C. § 2252(a)(2); and one count of possessing child pornography, in violation of 18 U.S.C. § 2251(d).

On December 6, 2022, the defendant pled guilty to Counts One through Seven pursuant to a written plea agreement.   In the plea agreement, the parties agreed that the defendant's overall offense level is 39, and his criminal history category is III.   Based upon this understanding, the parties stipulated at that time that the defendant's advisory Guideline range is 324 to 405 months' imprisonment but that, under Federal Rule of Criminal Procedure 11(c)(1)(C), an appropriate sentence is a term of imprisonment of between 240 and 300 months' imprisonment, a term of supervised release of life, a fine to be determined by the Court, special assessments to be

1

determined by the Court, and restitution to be determined by the Court.

The offense conduct contained in the Presentence Investigation Report ("PSIR") established the following fact-based sentencing enhancements:

    a.  the addition of two levels to the base offense level pursuant to § 2G2.2(b)(2) because the images involved prepubescent minors;

    b.  the addition of five levels to the base offense level pursuant to § 2G2.2(b)(3)(B) because the defendant distributed the materials in exchange for valuable consideration, but not for pecuniary gain;

    c.  the addition of four levels to the base offense level under § 2G2.2(b)(4) because the material depicts of sadistic or masochistic conduct or the sexual abuse or exploitation of an infant or toddler was involved;

    d.  the addition of two levels to the base offense level under § 2G2.2(b)(6) because a computer was used to commit the offense; and

    e.  the addition of five levels to the base offense level under § 2G2.2(b)(7)(D) because the defendant possessed at least 600 images of minors engaging in sexually explicit conduct.

In addition, the parties stipulated that the adjusted offense level should be increased by an additional two levels because the defendant willfully obstructed and impeded the investigation, as described in more detail below.   Further, the PSIR calculates that because the defendant committed the offense while under a criminal justice sentence, two points should be added to the criminal history computation under § 4A1.1(d).   The defendant notes that, under the proposed amendments to the Guidelines, to the extent they become effective on November 1, 2023, these

"status points" would not apply to him.    The defendant therefore calculates his criminal history category as three, instead of five, establishing a criminal history category of II.    With an offense level of 39 and a criminal history category of II, the defendant calculates that his Guideline range under the proposed amendment Guidelines is 292 to 365 months' imprisonment.

## II.    Factual Background

### a.   The Offense Conduct

As set forth in the PSIR, the defendant was an active user of a website, accessed through the Tor network, that was dedicated to the discussion and exchange of child sexual abuse material with a focus on the sexual exploitation of girls between the ages of 4 and 14, and that he used the moniker, OldmanForLil, while on that website.    During law enforcement's undercover operations between February and March 2021, law enforcement observed OldmanForLil, a "Registered Guest" status on this website, frequently welcome people who were arriving, bid farewell to those who were departing, applauded those who posted child sexual abuse material, and posted links to child sexual abuse material for the group to access.

On February 28, 2021, law enforcement accessed the website and documented that "OldmanForLil" posted links to five images, which are identified as Visual Depictions 1 through 5 in the Indictment:

- Visual Depiction One is an image depicting a prepubescent female estimated to be between four and seven years of age, wearing only a shirt that is pulled up above her breast area. The female is laying on her back on a blanket. The female's legs are spread apart, and her vagina is prominently exposed for the camera. The female has no noticeable breast development or pubic hair.

- Visual Depiction Two is an image depicting a fully nude prepubescent female estimated to be between the ages of six and eight on all fours. The female is pointed away from the camera with her head looking back. The central focus of the image is the female's vagina and anus which are prominently exposed.

- Regarding Visual Depiction Three, "OldmanForLil" posted the words "she loves to make daddy happy. Just look at that smile," followed by a link to an image depicting a prepubescent female estimated to be between the ages of four and six, with an adult male's fully erect penis inserted into her mouth. Only the adult male's penis is in the image and the female appears to be clothed. The female has young facial features and is of slight build.

- Regarding Visual Depiction Four, "OldmanForLil" posted "she has daddy right where she wants him," followed by a link to an image of a prepubescent female estimated to be between the ages of four and six. The female is looking into the camera and smiling while holding an adult male's erect penis in her right hand. The female has young facial features and is of slight build.

- Regarding Visual Depiction Five, "OldmanForLil" posted "she knows what daddy needs to relax him after work," followed by a link to an image depicting a prepubescent female estimated to be between the ages of six and eight on her knees performing oral sex on an adult male's penis. The female has young facial features and is of slight build.

During the investigation, the defendant was interviewed and admitted that he was "OldmanForLil" and that he addicted to child pornography.   He admitted that he had downloaded

4

and viewed child pornography on his laptop computer.   The defendant further admitted that he shared child pornography via links, had sexually explicit conversations with Tor users regarding the rape of children, and viewed child pornography involving adults with infants.   The defendant further admitted that he saw the FBI execute the search warrant on his neighbor's residence and destroyed the laptop that he had used to access Tor to view and share child pornography.   He said he disposed of the laptop in a dumpster.

Law enforcement seized a cellular telephone from the defendant's residence.   A forensic examination of that cell phone showed that it contained 3,297 images containing child sexual abuse material, including 177 that were of infants or toddlers, and 119 videos containing child sexual abuse material.   The defendant also possessed, on his cell phone, multiple memes that demonstrate a sexual interest in children.

b.   The Defendant's Prior Criminal Conduct

This was not the defendant's first encounter with the criminal justice system relating to child pornography.   As set forth in the PSIR, between April and August 2017, the defendant traded images of child pornography, including nine images captured by law enforcement, with other individuals over Yahoo messenger.   The defendant was convicted of possessing child pornography and the criminal use of a communication facility in the Westmoreland County Court of Common Pleas and sentenced to 11 ½ to 23 months' imprisonment.   The defendant was on probation for this state offense when he committed the instant federal offenses.

c.   Victim Children

As noted, the defendant possessed thousands of images and videos depicting child sexual abuse on just one of his devices, the cellular telephone that was seized by law enforcement from

5

his residence.    The defendant also distributed to other like-minded individuals extremely disturbing images over Tor, some of which are described above.    Based on this conduct alone, hundreds, if not thousands of children, were victimized by the defendant's conduct, many of whom have not been identified.    Law enforcement, however, was able to identify 110 known victims in the defendant's collection.    Of those who have been identified, at least 20 child victims are seeking restitution and 18 gave written victim impact statements.    For several of these identified child victims, the defendant possessed more than forty images depicting their sexual abuse.    At the sentencing hearing, the Government intends to seek leave from the Court to play approximately five videos of victims and their family members providing victim impact statements regarding the impact of the defendant's criminal conduct.

### III.    The Sentencing Guidelines

The recommendations of the Sentencing Guidelines are no longer mandatory, but sentencing courts "must consult these Guidelines and take them into account when sentencing." *United States v. Booker*, 543 U.S. 220, 264 (2005). The Sentencing Guidelines are "the 'starting point and the initial benchmark.'"    *Kimbrough v. United States*, 552 U.S. 85, 108 (2007) (quoting *Gall v. United States*, 552 U.S. 38, 49 (2007) (noting that the Guidelines should "be kept in mind throughout the process")).    Here, the parties have stipulated to a term of imprisonment of between 240 and 300 months.    The facts of this specific case, when combined with the history and characteristics of the defendant, all support a prison term of 300 months' imprisonment.

### a.    The Nature and Circumstances of the Offense

It is beyond dispute that the sexual exploitation of minors is a very serious crime. Congress has explicitly recognized that child pornography offenses are "crimes of violence."    *See*

18 U.S.C. § 3156. "An offender's pornography and erotica collection is the single best indicator of what he wants to do." KENNETH V. LANNING, OFFICE OF JUVENILE JUSTICE AND DELINQUENCY PREVENTION, CHILD MOLESTERS: A BEHAVIORAL ANALYSISBFOR PROFESSIONALS INVESTIGATING THE SEXUAL EXPLOITATION OF CHILDREN, 107 (5TH ED. 2010).

Using children to produce graphic, sexual images is a form of sexual abuse which can cause mental and physical harm to a child. *United States v. Champion*, 248 F.2d 502, 506 (6th Cir. 2001). "The 'victimization' of the children involved does not end when the camera is put away." *United States v. Norris*, 159 F.3d 926, 929 (5th Cir. 1998). The consumer of child pornography contributes to the harm to victims who are the subject of child pornography: (1) the abuse is perpetuated through instantaneous and world-wide dissemination, (2) the existence of the image is a permanent violation of the child=s privacy, and (3) the demand for the creation of more images is fueled by the consumer. *Norris*, 159 F.3d at 929-30. Consumers of child pornography, whether or not they are involved in production, contribute to the cycle of abuse and are in part responsible for the psychological and physical harm of the children used to produce the images. *United States v. Yeaple*, 605 F. Supp. 85, 86 (M.D. Pa. 1985); *see also, United States v. Ferber*, 458 U.S. 747, 759 (1982).

Here, the defendant's collection of child sexual abuse material was extensive and graphic, demonstrating his intent and sexual interest in children. In addition, the defendant was engaging with other similarly-minded people to receive and distribute child pornography. The government submits that when defendants like the defendant communicate with like-minded individuals about child sexual abuse, they go through a process of normalization and bonding, further contributing

to the cycle of abuse.   Accordingly, this factor weighs in favor of a within-guidelines sentence of 300 months' imprisonment.

    b.  <u>History and Characteristics of the Defendant</u>

A sentencing court has latitude to consider all information relevant to the background, character, and conduct of a defendant. 18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."); U.S.S.G. § 1B1.4 ("In determining the sentence to impose within the guideline range, or whether a departure from the guidelines is warranted, the court may consider, without limitation, any information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law."); *see also Pepper v. United States*, 562 U.S. 476, 488 (2011) (section 3661 permits a sentencing court to "consider the widest possible breadth of information about a defendant").

In this case, the defendant's repeated criminal activity has made clear that only a significant imprisonment will protect the public.   The defendant committed this offense while on probation for a prior child pornography offense, and took multiple steps to hide his conduct – using the Tor network, accessing his neighbor's wireless network, and even destroying his laptop when he learned of the investigation.

Further, by his own words, the defendant has proclaimed his sexual interest in children multiple times, both online and to law enforcement, demonstrating that his sexual interest in children is not fleeting or incidental.   All these facts militate in favor of a sentence that removes him from society for as long as possible under the plea agreement, in this case 300 months.

c. <u>The Seriousness of the Offense and the Need to Promote Respect for the Law and Provide Just Punishment</u>

The law is clear that child pornography crimes warrant stringent sentences.   The Court of Appeals for the Third Circuit has expressed disapproval of extremely lenient, below guideline range sentences in these cases.   In *United States v. Goff*, 501 F.3d 250 (3d Cir. 2007), the district court sentenced a child pornography defendant to four months of imprisonment, even though the applicable guideline range was 37 to 46 months.   The Third Circuit vacated the sentence and remanded for sentencing, holding that such a lenient sentence was unreasonable.   *Id.* at 262.   The court reasoned that the district court gave short shrift to the Sentencing Guidelines and did not properly consider a variety of 3553 factors.   Goff downplayed the seriousness of the offense by implying that it was a victimless crime, which was a solitary, private activity driven by his curiosity of the subject.   The Third Circuit rejected these claims as follows:

> Children are exploited, molested, and raped for the prurient pleasure of Goff and others who support suppliers of child pornography. These small victims may rank as no one else in Goff's mind, but they do indeed exist outside his mind. Their injuries and the taking of their innocence are far too real. There is nothing casual or theoretical about the scars they will bear from being abused for Goff's advantage. Far from persuading us that Goff's crime was relatively minor, his efforts to downplay the harm his actions have inflicted on others serve chiefly to highlight the concern the District Court should have had with Goff's failure to appreciate the seriousness of the offense.

*Id.* at 258-59.   Goff also argued that he was entitled to a downward departure/variance because he never acted out in any sexual way with children.   *Id.* at 259.   The Third Circuit dispatched this assertion:

> He was not charged with molestation, so pointing out that he hadn't committed it is, in one sense irrelevant. In another more important sense, however, it does say something meaningful, albeit not what the defense intended. While the defense effort to draw a spectator-vs-participant distinction does not show that Goff's

9

> pornography crime was of less than ordinary severity, it does reemphasize that Goff
> failed to fully appreciate that severity. The simple fact that the images have been
> disseminated perpetuates the abuse initiated by the producer of the materials.

*Id.* The Court criticized the district court's reliance upon Goff's lack of criminal history because many child pornography defendants are first time offenders. *Id.* at 260-61 (citing *United States v. Grinbergs*, 470 F.3d 758, 761 (8th Cir.2006) (the district court erred when it deemed an offense "atypical simply because the defendant had not committed other crimes.")). More recently, the Sixth Circuit underscored the seriousness of child pornography offenses. *United States v. Schrank*, 2020 WL 5511980, at *1-2 (6th Cir. Sept. 14, 2020).

The government urges this Court to fashion a sentence that recognizes the seriousness of the defendant's offenses while providing for just punishment and respect for the law. There can be no question that the defendant's offenses, both in their character and in their frequency and repetition, are among the most serious under the law. The trafficking of child pornography images is a horrific re-victimization of the children depicted. The United States asserts that the seriousness of the defendant's offenses necessitates that he be sentenced to a significant prison term, in order to promote respect for the law and to provide a just punishment.

    d.   <u>The Need for Adequate Deterrence & Protecting the Public</u>

Deterring the sexual exploitation of minors must be given significant weight at sentencing—children are the most defenseless members of our society and exploiting a child's innocence by possessing child pornography is an egregious crime. Practically speaking, severe criminal penalties for those who commit crimes exploiting children is critical to drying up the market and decreasing demand for material that exploits children. *See Goff*, 501 F.3d at 261 & (reversing the district court and stating: "The logic of deterrence suggests that the lighter the

punishment for downloading and uploading child pornography, the greater the customer demand for it, and so the more it will be produced. . . . deterring the production of child pornography and protecting the children who are victimized by it are factors that should have been given significant weight at sentencing . . . .").

Congress, the Supreme Court, and the Sentencing Commission believe general deterrence is a very important factor when considering an appropriate sentence.   *See United States v. Ferber*, 458 U.S. 747, 760 (1982) ("The most expeditious if not the only practical method of law enforcement may be to dry up the market for [child pornography] by imposing severe criminal penalties on persons selling, advertising, or otherwise promoting the product"); *Osbourne v. Ohio*, 495 U.S. 102, 109-10 (1990) ("It is also surely reasonable for the State to conclude that it will decrease the production of child pornography if it penalizes those who possess and view the product, thereby decreasing demand").   Thus, this factor includes the deterrence of the defendant in the instant case, as well as those who many consider similar offenses in the future.   Moreover, as the *Schrank* court pointed out: "[c]hild pornography offenses happen in the shadows, making it difficult to apprehend perpetrators . . . .   It is thus especially important that courts impose sentences sufficient to deter this clandestine criminal conduct."   2020 WL 5511980, at *2.

As discussed herein, the defendant's criminal conduct in this case demonstrates explicit sexual interest in prepubescent children, including infants and toddlers, making him a danger to children.   It is clear from the nature and circumstances of the Defendant's offenses that he was obsessively focused on fueling his sexual fantasies by seeking out and sharing child pornography. The public can only be adequately protected from the Defendant with a significant prison term. Similarly, the public can only be protected from like-minded individuals (and those individuals

adequately deterred from acting on such an all-consuming obsession) with a significant sentence that demonstrates the Court's willingness to deliver an appropriate punishment.

      e.    <u>Need to Avoid Sentencing Disparity</u>

The defendant has committed serious child pornography crimes in a manner that triggered several fact-based enhancements.   "Sentencing disparities are at their ebb when the Guidelines are followed, for the ranges are themselves designed to treat similar offenders similarly.   That was the main goal of the Sentencing Reform Act.   The more out of range sentences that judges impose . . .the more disparity there will be."   *United States v. Shrake*, 515 F.3d 743, 748 (7th Cir. 2008).   It is the government's position that a sentence within the advisory guideline range here is appropriate, not unreasonable, and minimizes disparities, and is appropriate in light of the factors set forth in Section 3553(a).

**IV.    A Lifetime of Supervised Release Is Reasonable and Appropriate**

Regardless of the term of imprisonment, this Court should impose a term of supervised release that extends for the life of the defendant. "Supervised release fulfills rehabilitative ends, distinct from those served by incarceration." *United States v. Johnson*, 529 U.S. 53, 59 (2000). Supervised release is not a punishment in lieu of incarceration.   *See United States v. Granderson*, 511 U.S. 39, 50 (1994).   If being on supervised release were the punitive equivalent of being in prison, and if it served the just desserts function, there would be no need to put most criminals in prison. *See United States v. Irey*, 612 F.3d 1160, 1210 (11th Cir. 2010).

The life term recommendation contained in Section 5D1.2(b) is evidence that recidivism rates for sex offenders do not appreciably decline as offenders age.   *See* H.R. Rep. No. 107-527, at 2 (2002) (discussing the merits of a life term of supervised release for sexual offenders); *see*

*also supra* (discussing defendants over the age of 60 who have committed similar federal child exploitation crimes).   Because, in sex crimes cases, there is no reason to believe that the need for supervision inherently decreases with time, Congress found lifetime supervised release to be appropriate, and thus directly inserted such a recommendation into the Guidelines.   *See id*.   More specifically, the passage of 18 U.S.C. § 3583(k) recognized the long-standing concerns of federal judges and prosecutors regarding the inadequacy of the existing supervision periods for sex offenders, particularly for the perpetrators of child sexual abuse crimes, whose criminal conduct may reflect deep-seated aberrant sexual disorders that are not likely to disappear within a few years of release from prison.   Many of these offenders need long term or lifetime monitoring and oversight. *See* H.R. Conf. Rep. No. 108-66, at 49-50 (2003), *reprinted in* 2003 U.S.C.C.A.N. 683, 684.   A term of supervised release for life is reasonable and appropriate in this case to achieve rehabilitative ends and to protect children from further victimization.

## V.   Restitution

Pursuant to 18 U.S.C. § 2259(a), restitution to child pornography victims is mandatory.   A defendant must be ordered to pay "the full amount of the victim's losses," which may include "any costs incurred by the victim" for:

(a)   medical services relating to physical, psychiatric, or psychological care;
(b)   physical and occupational therapy or rehabilitation;
(c)   necessary transportation, temporary housing, and childcare expenses;
(d)   lost income;
(e)   attorneys' fees, as well as other costs incurred; and
(f)   any other losses suffered by the victim as a proximate result of the offense.

18 U.S.C. § 2259(b)(1) and (3).   A court may not decline to issue a restitution order because of

"the economic circumstances of the defendant" or "the fact that a victim has received, or is entitled to receive, compensation for his or her injuries from the proceeds of insurance or any other source."   18 U.S.C. § 2259(b)(4)(B).

As noted, twenty victims have requested restitution in this case, and their information has been forwarded to defense counsel and the Probation Office.   Defense counsel has indicated that he has reached a resolution with all twenty victims.

**VI.**     **Conclusion**

14

For all the foregoing reasons, the Government respectfully requests that the Court consider the applicable guidelines and the factors of 18 U.S.C. § 3553, including the nature and circumstances of the offense, the history and circumstances of the defendant, the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, to afford adequate deterrence, and to protect against further crimes of the defendant, and in so doing, sentence the defendant to not less than 300 months' imprisonment.

Respectfully submitted,

ERIC G. OLSHAN
United States Attorney

By:   *s/Karen Gal-Or*
      Karen Gal-Or
      Assistant United States Attorney